43 P.3d 196

**FLOOD CONTROL DISTRICT OF MARICOPA COUNTY, Petitioner,**

v.

**Hon. F. Pendleton GAINES, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Paloma Investment Limited Partnership, a limited partnership, Prudential Insurance Co. of America, a New Jersey corporation, Paloma Ranch Joint Venture, a joint venture, The Hartford, a corporation, Gillespie Dam Investments, L.L.C., a limited liability company, Paloma Water Users, Inc., a corporation, Theba Management Co., a corporation and Charter L.L.C., a limited liability company, Real Parties in Interest.**

**No. 1 CA–SA 01–0186.**

Court of Appeals of Arizona, Division 1, Department D.

April 2, 2002.

Helm & Kyle, LTD By John D. Helm, Roberta S. Livesay, Patricia L. Barfield, Tempe, Attorneys for Petitioner.

Mesch, Clark & Rothschild, P.C. By J. Emery Barker, Scott H. Gan, Alan N. Ariav, Tucson, Attorneys for Real Parties in Interest.

## OPINION

HALL, Judge.

¶1 Petitioner Flood Control District of Maricopa County ("FCD") seeks special action relief from the trial court's denial of its motion for summary judgment on a counterclaim filed by real parties in interest ("RPIs"). The controlling issue is whether the period within which an inverse condemnation action must be commenced after accrual is the one-year period for actions

against public entities, Ariz.Rev.Stat. ("A.R.S.") § 12–821 (1994), or the ten-year prescriptive period to recover lands in the possession of another, A.R.S. § 12–526(A) (1992). We conclude that § 12–821 supercedes the holding in *Maricopa County Municipal Water Conservation Dist. No. 1 ("Water District") v. Warford*, 69 Ariz. 1, 206 P.2d 1168 (1949), that the ten-year period of Arizona Code Annotated ("A.C.A.") § 29–103 (1939) (now A.R.S. § 12–526) governs the time for commencing an inverse condemnation action. Therefore, we reverse the trial court's order denying FCD's summary judgment motion and remand for further proceedings consistent with this opinion.

## JURISDICTION

 ¶ 2 We rarely accept special action jurisdiction when a party seeks relief from the denial of a motion for summary judgment. *See Piner v. Superior Court*, 192 Ariz. 182, 184, ¶ 8, 962 P.2d 909, 911 (1998); *Orme School v. Reeves*, 166 Ariz. 301, 302–03, 802 P.2d 1000, 1001–02 (1990). However, there are circumstances present in this case, as there were in *Denton v. American Family Care*, 190 Ariz. 152, 154, 945 P.2d 1283, 1285 (1997), that militate in favor of our acceptance of special action jurisdiction. Section 12–821 (in its present form) is relatively new, and the issue presented is one of first impression. *See id.* Trial courts in Maricopa County have reached contrary conclusions on the issue.[1] *See id.* The issue is of statewide significance, affecting not just the parties involved, but all inverse condemnation cases. *See id.* Also, the question presented is purely a question of law. *See id.* "Special action review is particularly appropriate where the issue of the statute of limitations has been raised and, where that claim is denied incorrectly, there is no plain, speedy or adequate remedy by appeal." *Canteen Corp. v. Superior Court*, 158 Ariz. 461, 461, 763 P.2d 525, 525 (App.1988). Further, the damages

sought by RPIs exceed $100 million and "[n]ormal appellate procedures will result in unnecessary cost and delay to all litigants." *Summerfield v. Superior Court*, 144 Ariz. 467, 469, 698 P.2d 712, 714 (1985). Although resolution of this issue will not completely terminate the counterclaim unless the trial court rules in favor of FCD as a matter of law on the accrual issue, *see infra* n. 5, we believe the factors outlined above warrant our acceptance of special action jurisdiction. Therefore, we accept jurisdiction of the petition for special action.

## BACKGROUND

¶ 3 FCD is a political subdivision responsible for developing and managing flood control projects to ensure public safety. In the early 1980s, FCD obtained easements over a number of properties in southwest Maricopa County, between Ninety–First Avenue and the Gillespie Dam, as part of an effort to contain flooding. FCD then began to clear vegetation from a 1,000–foot–wide corridor along thirty-seven miles of the Gila River from Ninety–First Avenue to the Gillespie Dam. In 1982, Paloma Ranch Joint Venture ("PRJV"), conveyed an easement to FCD over a 26.8 acre parcel for the clearing of vegetation. In 1991, Paloma Investments Limited Partnership ("PILP"), a successor in interest to PRJV, conveyed the fee interest in the easement parcel to FCD.

¶ 4 On January 9, 1993, the Gillespie Dam breached. The breach caused severe damage to downstream landowners' property. In 1995, the downstream landowners filed suit against PRJV, PILP, Prudential,[2] and FCD, alleging that their property was flooded and damaged as a result of the dam's failure. On September 18, 1996, in connection with the downstream landowners' lawsuit, PRJV, PILP and Prudential filed a "Joint Notice of Claim" that sought indemnification from FCD and alleged that FCD had a duty to defend them against the lawsuit pursuant to

---

1. In two similar cases, Maricopa County Superior Court judges have ruled that A.R.S. §§ 12–821 and/or –821.01(A) (1994) (barring causes of action against public entity if notice of claim not filed within 180 days) supercede earlier cases. *See* Minute Entry, February 18, 1997, *Zeman v. City of Mesa*, CV 96–01942 (Steven D. Sheldon,

J.); Minute Entry, April 6, 2000, *Maricopa County v. Salamandick Investments Southwest, Inc.*, CV 98–8016728 (Edward O. Burke, J.).

2. Prudential was one of the partners in PRJV and a successor in interest of PRJV.

an indemnity agreement contained in the easement agreement between PRJV and FCD.

¶ 5 On April 17, 1997, FCD filed a separate suit (this case) against PRJV, PILP, and Prudential seeking a declaratory judgment that it had no obligation to indemnify or defend them. On December 31, 1998, RPIs [3] filed a counterclaim seeking damages against FCD for inverse eminent domain and negligence.[4] FCD then filed a motion for summary judgment on the counterclaims alleging that the action was time-barred by the one-year statute of limitations for actions against public entities and that RPIs failed to comply with the notice of claim statute. *See* §§ 12–821 and –821.01. The trial court summarily denied FCD's motion for summary judgment. FCD then filed this special action on the issue whether RPIs' counterclaim is time-barred by § 12–821.

## ANALYSIS

■ ¶ 6 Relying on § 12–821, FCD contends that RPIs' counterclaim is time-barred because it was not brought within one year of accrual. Section 12–821, as amended in 1994, provides: "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." The counterclaim was filed December 31, 1998. If the one-year limitations period of § 12–821 applies to inverse condemnation actions, then the counterclaim is time-barred if it accrued before December 31, 1997.[5]

¶ 7 RPIs contend that the applicable limitations period is the ten-year period for commencing an action to recover lands in the possession of another. *See* A.R.S. § 12–526(A). According to RPIs, the ten-year period is mandated by the Arizona Supreme Court's decision in *Water District*. Warford's property was flooded in 1946 and 1947 after the Water District extended a diversion canal to the northwest corner of his land. He filed a complaint seeking damages based on inverse eminent domain[6] in which he alleged that the Water District took his land by reason of the flooding. The Water District contended that Warford's suit was barred by the one-year statute of limitations in A.C.A. § 29–201 (1939), which provided in relevant part: "There shall be commenced and prosecuted within one [1] year after the cause of action shall have accrued, and not afterward, the following actions: ... [u]pon a liability created by statute...."

¶ 8 The court found the one-year period of limitations in A.C.A. § 29–201 inapplicable because the right of an individual to recover damages for the taking or injury to his property existed prior to the adoption of Arizona's Constitution and was not "a liability created by statute." *Water District*, 69 Ariz. at 8, 206 P.2d at 1172. The court characterized the Water District's periodic flooding of Warford's land as a prescriptive easement and held that the applicable limitation period was the ten-year period in A.C.A. § 29–103. *Id.* at 9–10, 206 P.2d at 1173.[7]

---

3. On April 16, 1998, Gillespie Dam Investments, L.L.C. acquired PILP's rights to any claims against FCD arising from the dam failure; The Hartford, PILP's insurer, retained its rights to pursue possible claims pursuant to an indemnity agreement among Prudential, PRJV, and FCD. Paloma Water Users, Inc. and Theba Management Co. held leasehold interests in the water from Gillespie Dam and assigned their interests to Charter L.L.C. on December 30, 1998. Although all these entities are named as real parties in interest in the caption of this case, the only parties asserting the claim of inverse eminent domain are PILP, Gillespie Dam Investments, L.L.C., Paloma Water Users, Inc., Theba Management Co., and Charter L.L.C.

4. The RPIs have not disputed the applicability of § 12–821 to the negligence counts of the counterclaim.

5. For purposes of this special action, we assume RPIs' cause of action accrued on the day the dam failed—January 9, 1993. However, RPIs are not foreclosed on remand from asserting that their cause of action actually accrued at a later date.

6. An action in inverse eminent domain, commonly referred to as inverse condemnation, derives from Article 2, Section 17 of the Arizona Constitution, which provides in relevant part: "No private property shall be taken or damaged for public ... use without just compensation having first been made...."

7. As rationale, the court quoted with approval the following passage from *Aylmore v. City of Seattle*, 100 Wash. 515, 171 P. 659, 660 (Wash. 1918):

. If the right of the owner to recover compensation for property actually taken is barred be-

¶ 9 RPIs' reliance on *Water District* is misplaced. First, the statute found inapplicable in *Water District* applied only to liabilities created by statute. Section 12–821, however, is not so limited; it applies to "[a]ll actions against any public entity." [8] The legislature may, within constitutional limits, abrogate the common law when its intent to do so is "clearly and plainly manifest[ed]." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). We must interpret an unambiguous statute according to its plain meaning. *Rineer v. Leonardo*, 194 Ariz. 45, 46, ¶ 7, 977 P.2d 767, 768 (1999). Clearly, the words "[a]ll actions" in § 12–821 do not lend themselves to an interpretation that would exclude an inverse condemnation action:

> The word "all" means exactly what it imports. It is defined in Webster's New International Dictionary, 2d Ed., as "the whole number." A more comprehensive word cannot be found in the English language. Standing by itself the word means all and nothing less than all.

*Estate of Tovrea v. Nolan*, 173 Ariz. 568, 572, 845 P.2d 494, 498 (App.1992) (quoting *In re Greenwald's Estate*, 186 Misc. 654, 53 N.Y.S.2d 937, 939 (Surrogate Ct.1945) (internal citation omitted)).

¶ 10 Second, subsequent cases have not interpreted *Water District* as precluding the legislature from establishing the period within which constitutionally-based causes of action must be brought. In *Rutledge v. State*, 100 Ariz. 174, 412 P.2d 467 (1966), Rutledge filed a complaint in inverse eminent domain more than two years after the state completed construction of a portion of a controlled-access freeway that restricted access to his land. Relying on a special two-year statute of limitations applicable to lands taken or damaged in construction of highways,[9] the trial court granted summary judgment to the state. *Id.* at 177, 412 P.2d at 470. On appeal, Rutledge, citing *Water District*, contended that the limitations period conflicted with Article 2, Section 17 of the Arizona Constitution (the eminent domain clause) and was therefore unconstitutional. *Id.* at 179, 412 P.2d at 471. After first distinguishing *Water District* as a case involving "the taking of an easement" rather than incidental damage to property as alleged by Rutledge, *id.*, the court found the two-year statute to be a "reasonable" exercise of legislative authority:

> The legislature may impose a reasonable time within which an action must be brought to recover damages recoverable under a constitutional provision. A two-year statute of limitations is a reasonable time within which a claimant must bring his action to recover for incidental damages incurred where there is no physical

---

fore the expiration of the prescriptive period, this anomalous situation will result: He will continue to be the owner of the property until he loses his title by adverse possession, yet during the interval he cannot exercise a single act of beneficial ownership or do any act to toll the running of the statute. He will be deprived of the use and enjoyment of property which belongs to him, both in law and in equity, while the one who has taken it without title either legal or equitable can exercise over it every right ordinarily incident to ownership. We are unable to appreciate a condition where an owner is deprived of all right of enjoyment, while another who holds no sort of title to the property may use and deal with it as his own. Title cannot be invested where none has been divested. To hold otherwise is to sanction a custom belonging to an age long since passed, which permitted one to acquire property of another merely by taking it provided he was strong enough to retain it.

*Water District*, 69 Ariz. at 8–9, 206 P.2d at 1172–73.

**8.** "'Public entity' includes this state and any political subdivision of this state." A.R.S. § 12–820(6) (1992). That FCD is a public entity is undisputed.

**9.** Former A.R.S. § 18–158 provided:

> An action brought to recover possession of or to clear title to real property claimed by the state, or any legal subdivision thereof, as a public highway, or an action brought to recover compensation or damage for property taken or damaged in or for the construction of a public highway, shall be commenced within two years after the cause of action has accrued and not afterwards.

*See* now A.R.S. § 28–7052 (1997); *see also* A.R.S. § 28–7102(B) (1997) (requiring a property owner to commence an action for inverse condemnation within eighteen months after adoption by the state of a highway corridor). We need not decide on this case whether the special limitations periods in statutes such as §§ 28–1052 and –7102(B) would prevail over the more general provision of § 12–821.

invasion of his property through construction of a public highway.

*Id.* at 180, 412 P.2d at 472 (citation omitted).

¶ 11 In *Barrio v. San Manuel Division Hospital for Magma Copper Co.,* 143 Ariz. 101, 104–07, 692 P.2d 280, 283–86 (1984), the court found unconstitutional a special statute of limitations that required a minor injured when below the age of seven to bring the action by age ten because it "abrogated" rather than "regulated" the action in violation of Article 18, Section 6 of the Arizona Constitution (the anti-abrogation clause). Article 18, Section 6 provides: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." In doing so, the court distinguished *Rutledge* as an example of the legislature setting reasonable limits on the time in which to exercise rights guaranteed by the Arizona Constitution.

> In *Rutledge* we upheld a two year statute of limitations for a plaintiff attempting to assert a claim in inverse eminent domain. We acknowledged that even the constitutional right to recover damages for the taking of property was subject to legislatively enacted time barriers. We have no hesitation in making the same statement with regard to tort claims against those who render medical services. However, *Rutledge* does not stand for the constitutionality of a statute which would require a claimant in inverse eminent domain to act against the state before he reached the age of ten.

*Id.* at 105–06, 692 P.2d at 284–85.

¶ 12 More recently, in *Clouse v. State,* 199 Ariz. 196, 203, ¶ 24, 16 P.3d 757, 764 (2001), the Arizona Supreme Court held that the legislature acted within the power granted to it by the Arizona Constitution Article 4, Part 2, Section 18 (the immunity clause) when it enacted a statute defining instances in which public entities and employees are entitled to immunity,[10] notwithstanding the Arizona Supreme Court's holding in *Stone v. Arizona Highway Commission,* 93 Ariz. 384, 381 P.2d 107 (1963), that abolished the substantive

defense of governmental immunity. Section 18 provides: "The Legislature shall direct by law in what manner and in what courts suits may be brought against the State."

¶ 13 Likewise, the immunity clause also provides the legislature with the explicit authority, implicitly recognized in earlier cases such as *Rutledge* and *Barrio,* to regulate the time within which suits against the state must be commenced. *See Stulce v. Salt River Project Agric. Improvement and Power Dist.,* 197 Ariz. 87, 93, ¶ 22, 3 P.3d 1007, 1013 (App.1999) (Arizona Constitution Article 4, Part 2, Section 18 "specifically empowers the legislature to enact statutes of limitations and procedures that may treat lawsuits against the state differently from other lawsuits."). "The legislature may restrict an individual's right to sue the state and the manner in which a suit may be maintained." *Landry v. Superior Court,* 125 Ariz. 337, 338, 609 P.2d 607, 608 (App.1980).

¶ 14 RPIs nonetheless contend, citing *Barrio,* 143 Ariz. at 107, 692 P.2d at 286, and *Rutledge,* 100 Ariz. at 180, 412 P.2d at 472, that the applicable limitations period in this case should be the ten-year period provided in § 12–526(A) because the one-year period provided in § 12–821 is not reasonable. In effect, RPIs are claiming that application of § 12–821 to their inverse condemnation claim would be unconstitutional. We disagree.

¶ 15 We review de novo the constitutionality of a statute. *Little v. All Phoenix S. Cmty Mental Health Ctr., Inc.,* 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App.1995). A statute is presumed constitutional. Before invalidating a statute, we must be satisfied beyond a reasonable doubt that it is unconstitutional. *State v. Davey,* 27 Ariz. 254, 258, 232 P. 884, 885 (1925); *McClead v. Pima County,* 174 Ariz. 348, 352, 849 P.2d 1378, 1382 (App.1992).

¶ 16 As already noted, the immunity clause permits the legislature to reasonably regulate the manner and time for bringing constitutionally-based causes of action. For example, in *Shaw v. State,* 8 Ariz.App. 447, 450, 447 P.2d 262, 265 (1968), we upheld

---

**10.** The legislation (entitled Actions Against Public Entities or Public Employees) is codified at

§§ 12–820 to –826, and includes the statute at issue in this case.

as "not unreasonable" a statute requiring that an action to recover a license tax be filed within thirty days of payment. However, a statute of limitations that effectively bars a cause of action before it may be brought is not reasonable. *See Barrio,* 143 Ariz. at 106, 692 P.2d at 285 (The legislature "may not, under the guise of 'regulation,' so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action."); *Boswell v. Phoenix Newspapers, Inc.,* 152 Ariz. 9, 18, 730 P.2d 186, 195 (1986) ("We differentiate between abrogation and regulation by determining whether a purported legislative regulation leaves those claiming injury a reasonable possibility of obtaining legal redress."). The statute found unconstitutional in *Barrio,* former A.R.S. § 12–564(D), provided: "Notwithstanding the provisions of § 12–502, in an action on behalf of a minor injured under the age of seven, the applicable period of limitations [three years] begins to run when the minor reaches his or her seventh birthday, or on death, whichever occurs earlier." The court found that § 12–564(D) barred a minor's action for injuries before the action could reasonably be brought and held that it violated the anti-abrogation clause. *Barrio,* 143 Ariz. at 107, 692 P.2d at 286.

¶ 17 Because § 12–821, on the other hand, does not bar an action for inverse condemnation until one year after it accrues, and because a cause of action under § 12–821 does not accrue until it is "discovered," RPIs were not deprived of the ability to bring the action. Under the discovery rule, a limitations period does not begin running until the plaintiff discovers or reasonably should have discovered that the injury was caused by the defendant's conduct. *See Stulce,* 197 Ariz. at 90, ¶ 11, 3 P.3d at 1010; *see* § 12–821.01(B) (cause of action does not accrue under notice of claim statute until "the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage").

¶ 18 We conclude that § 12–821's one-year limitations period is reasonable because it regulates rather than abrogates the time within which an action must be filed against a public entity.[11]

## CONCLUSION

¶ 19 Section 12–821, which bars all actions against the state or its political subdivisions not brought within one year of when the cause of action accrues, supercedes *Water District.*

¶ 20 Therefore, the trial court's order denying FCD's motion for summary judgment is reversed and remanded for further proceedings consistent with this opinion.

CONCURRING: E.G. NOYES, JR., and WILLIAM F. GARBARINO, Judges.

11. Under the particular circumstances of this case, even assuming the cause of action accrued when the dam failed on January 9, 1993, RPIs had until July 1995 to bring their action. The version of § 12–821 in effect when the dam burst in 1993 required persons having claims against a public entity to file such claims within twelve months after the cause of action accrued and provided in subsection A: "Any claim which is not filed within twelve months after the cause of action accrues is barred and no action may be maintained except upon a showing of excusable neglect if the action is brought within the otherwise applicable period of limitations...." Effective July 17, 1993, § 12–821 was repealed and a new § 12–821 was substituted: "All *personal injury* actions against any public entity or public employee involving acts that are alleged to have occurred within the scope of the public employee's employment shall be brought within one year after the cause of action accrues and not

afterward." 1993 Ariz. Sess. Laws, ch. 90, § 8 (emphasis added). The new § 12–821 was, in turn, amended effective July 17, 1994, to delete the limitation to personal injury actions and now reads: "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." 1994 Ariz. Sess. Laws, ch. 162, § 1. Thus, the original twelve-month limitation contained in the 1984 version of § 12–821 was no longer in effect on January 9, 1994—one year after the dam burst. Instead, from July 17, 1993 until July 17, 1994, the one-year period of limitations for actions against public entities was limited to personal injury actions. Thus, if the applicable period of limitations for an inverse condemnation action is governed by § 12–821 (1994), RPIs had until July 17, 1995—one year after the effective date of the current statute—to commence their action. *See* A.R.S. § 12–505(B), (C) (1992).