IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

DEUTSCHE BANK NATIONAL TRUST COMPANY, *Plaintiff/Appellant*,

*v.*

PHEASANT GROVE LLC, *Defendant/Appellee*.

No. 1 CA-CV 16-0663
FILED 8-23-2018

Appeal from the Superior Court in Maricopa County
No. CV2015-005125
The Honorable Douglas Gerlach, Judge

**AFFIRMED**

COUNSEL

Gust Rosenfeld PLC, Phoenix
By Scott A. Malm, Charles W. Wirken
*Counsel for Plaintiff/Appellant*

Robert Stewart & Associates PC, Phoenix
By Robert L. Stewart, Jr., Sid A. Horwitz
*Counsel for Defendant/Appellee*

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which
Presiding Judge James P. Beene and Judge Kent E. Cattani joined.

**H O W E**, Judge:

¶1        Deutsche Bank National Trust Company (the "Bank") sued Pheasant Grove LLC seeking a reformation of a deed of trust ("DOT") secured by Pheasant Grove's property and a declaratory judgment that it holds a superior interest in the property. The trial court granted Pheasant Grove summary judgment, ruling that the Bank had filed its suit outside the applicable statute of limitations' time period.

¶2        The Bank has appealed that ruling, raising several claims of error. Its primary argument, however, is that although its reformation claim may be barred by the applicable statute of limitations, its declaratory judgment claim—that the Bank's interest in the property was superior to Pheasant Grove's interest under a constructive notice or replacement mortgage theory—was within the statute of limitations applicable to an action to collect a debt. We reject all of the Bank's claims of error, and we specifically hold that when a claim for reformation is time-barred, a request for declaratory judgment seeking substantively the same relief as the reformation claim is also time-barred.

## FACTS AND PROCEDURAL HISTORY

¶3        This action involves the real property known as 40660 N. 109th Place, Scottsdale, Arizona (the "Property"). The Property includes a residence built across two adjoining parcels, described as Lots 8 and 9, Desert Mountain Phase II Unit Six. Lot 8 is assigned Maricopa County Assessor's Parcel Number ("APN") 219–56–205 and Lot 9 is assigned APN 219–56–206.

¶4        Brian Pellowski and Debra Peterson (collectively, the "Homeowners") bought the Property in 2000 and obtained a $1.26 million loan secured by a recorded DOT in favor of Washington Mutual Bank, FA that encumbered Lots 8 and 9. The Homeowners refinanced the loan in 2001 and 2002. Both times the Homeowners recorded a new DOT in Washington Mutual's favor, encumbering Lots 8 and 9; both times Washington Mutual released the prior DOT.

¶5        The Homeowners refinanced the loan again in 2003. They recorded a DOT in Washington Mutual's favor (the "2003 DOT"), and Washington Mutual released the prior DOT. Although the 2003 DOT referenced the address of 40660 N. 109th Place, Scottsdale, Arizona, the 2003 DOT legally described the collateral as only "Lot 8, DESERT MOUNTAIN PHASE II, UNIT SIX." JP Morgan Chase Bank NA ("Chase") acquired the

beneficial interest in the 2003 DOT from Washington Mutual. Chase assigned its beneficial interest in the 2003 DOT to the Bank in November 2012; the assignment described the collateral as "LOT 8, DESERT MOUNTAIN PHASE II, UNIT SIX."

¶6            Meanwhile, the Homeowners borrowed $800,000 from First National Bank of Omaha ("FNB") in September 2006 and secured that loan with a DOT in FNB's favor that encumbered Lots 8 and 9. The Homeowners defaulted on the loan, and FNB bought the Property in a trustee's sale in July 2010. FNB later quitclaimed the Property to Pheasant Grove in December 2011.

¶7            The Homeowners subsequently defaulted on the promissory note secured by the Bank's 2003 DOT, and the Bank learned that Pheasant Grove had obtained the Property without satisfying the 2003 DOT. In August 2015, the Bank filed a three-count "Verified Complaint for Quiet Title" against Pheasant Grove. Count One sought reformation of the 2003 DOT to include Lot 9 in the legal description. Count Two was denominated quiet title; it sought a determination pursuant to Arizona's quiet title statute, A.R.S. § 12–1101, that the Bank "has a superior interest in Lots 8 and 9 of the Property and that Pheasant Grove's interest in the Property is subject to [the Bank's] interest under the Deutsche Bank DoT." Count Three was denominated declaratory relief; it sought a declaration under A.R.S. § 12–1101 that "Plaintiff's interest under the Deutsche Bank DoT encumbers both Lots 8 and 9 of the Property and is superior to any other encumbrances currently existing against the property and that Pheasant Grove's interest in the Property is subject to Plaintiff's interest under the Deutsche Bank DoT."

¶8            Pheasant Grove moved for summary judgment, arguing that (1) the reformation claim was barred under the applicable statute of limitations and (2) the quiet title and declaratory relief claims failed as a matter of law because the Bank did not hold title to either Lot 8 or 9. In response, the Bank argued that (1) the statute of limitations did not apply to a reformation claim and (2) the declaratory relief claim sought a determination that Pheasant Grove had constructive notice of the 2003 DOT, which had priority over FNB's DOT, or alternatively, that the 2003 DOT was a replacement DOT for the 2000, 2001, and 2002 DOTs. Additionally, the Bank moved under Arizona Rules of Civil Procedure 15

and 56(f) (2016)[1] for additional time to conduct discovery and filed a "countermotion" for leave to amend the complaint to clarify the declaratory relief sought.

¶9        The trial court denied the Bank's motions and granted summary judgment in Pheasant Grove's favor:

> Almost 12 years after the fact—11 years, nine-and-a-half months after the fact, to be precise—Deutsche Bank as a successor wants to be relieved of what amounts to its own mistake. The statute of limitations ran on that claim some time ago. There's nothing in the record that would warrant the Court to recognize a tolling of the statute of limitations, and otherwise if this is something that goes up on appeal, I'll simply adopt the other reasons set forth in the Defendant's motion and reply memorandum.

¶10        The trial court entered a final judgment and the Bank timely appealed.

## DISCUSSION

### 1. Rule 56(f) Motion

¶11        The Bank argues that the trial court erred by denying its Rule 56(f) motion. We review the denial of a Rule 56(f) request for an abuse of discretion. *Simon v. Safeway, Inc.*, 217 Ariz. 330, 332 ¶ 4 (App. 2007). The trial court abuses its discretion if it makes an error of law or the record does not substantially support its decision. *MM&A Prods., LLC v. Yavapai-Apache Nation*, 234 Ariz. 60, 66 ¶ 18 (App. 2014).

¶12        A party opposing summary judgment may seek additional discovery before responding to the motion for summary judgment. *See generally* Ariz. R. Civ. P. 56(f) (2016). Rule 56(f)'s "major objective" is "to insure that a diligent party is given a reasonable opportunity to prepare his case." *Simon,* 217 Ariz. at 333 ¶ 6 (citations omitted). Accordingly, the motion must be accompanied by an affidavit "describing the reasons justifying the delay," including "the evidence outside the party's control, its location, what the party believes the evidence will show, the discovery

---

[1]        The Arizona Rules of Civil Procedure were revised effective January 1, 2017, to reflect comprehensive stylistic and substantive changes. To be consistent with the record below and briefing on appeal, we cite the former rules.

method the party wishes to use, and an estimate of the time required to complete the discovery." *Id.* (citation omitted).

¶13 The trial court did not abuse its discretion in denying the motion. In the Bank's Rule 56(f) affidavit, counsel stated that it would require two months to complete discovery. The trial court did not rule on the Rule 56(f) motion until two months later, effectively giving the Bank the two months it stated that it needed, even though the court technically denied the motion. As the trial court noted, the request was "in effect, moot because Deutsche Bank has had the benefit of the two months that it said were required." In its ruling, the trial court nevertheless allowed the Bank to file a new, comprehensive response and statement of facts, but the Bank did not file a new statement of facts and its second response largely restated its first. In the trial court and on appeal, the Bank has not explained why the evidence it hoped to discover could not have been obtained during the eight months preceding the summary judgment motion. As such, Deutsche Bank has not presented a prima facie case that it should have been allotted additional time for discovery. Thus, the trial court did not abuse its discretion by denying the Rule 56(f) motion.

## 2. Summary Judgment: Declaratory Judgment Claim

¶14 The Bank contends that the trial court erred in granting summary judgment against its claim that it was entitled to a declaratory judgment stating that its interest in Lot 9 was superior to Pheasant Grove's interest.[2] The Bank argues that Pheasant Grove had constructive notice of its interest in Lot 9, and because the Bank was seeking to enforce the 2003 DOT against Pheasant Grove's interest, the trial court should have applied the six-year limitations period under A.R.S. § 12–548, which applies to actions for debt.[3]

---

[2] The Bank does not dispute the granting of summary judgment based on the reformation or quiet title claims.

[3] Although the complaint did not specifically raise constructive notice, it alleged facts to support its contention that Pheasant Grove had constructive notice that the 2003 DOT encumbered Lots 8 and 9; thus, the complaint sufficiently raised this issue. *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419 ¶ 6 (2008) (citation omitted) ("Arizona follows a notice pleading standard, the purpose of which is to give the opponent fair notice

¶15     A motion for summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990). We review de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Parkway Bank & Trust Co. v. Zivkovic*, 232 Ariz. 286, 289 ¶ 10 (App. 2013). The application of the statute of limitations, including the question of accrual, is also reviewed de novo. *Cook v. Town of Pinetop-Lakeside*, 232 Ariz. 173, 175 ¶ 10 (App. 2013).

¶16     The Bank argues that a six-year statute of limitations under A.R.S. § 12–548(A)(1) applies to the declaratory relief claim premised on constructive notice. Section 12–548(A)(1) provides that "[a]n action for debt shall be commenced and prosecuted within six years after the cause of action accrues . . . if the indebtedness is evidenced by or founded on . . . [a] contract in writing that is executed in this state." The Bank contends that it filed its complaint with this claim within six years of the claim's accrual. The Bank believes that the claim accrued when Pheasant Grove received title to the Property in 2011, when a proper title search would have revealed to Pheasant Grove the Bank's 2003 DOT. Because the Bank filed its complaint in August 2015, it argues that it satisfied A.R.S. § 12–548(A)(1)'s time limit.

¶17     In determining the limitations period applicable to a claim for declaratory relief, we examine the substance of the action "to identify the relationship out of which the claim arises and the relief sought." *Canyon del Rio Inv'rs, L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 341 ¶ 21 (App. 2011) (citation omitted). The Bank seeks a declaration that Pheasant Grove holds title to Lot 9 subject to the Bank's 2003 DOT, which is nothing more than an action to reform the 2003 DOT to include Lot 9 in the legal description. *See Cosgrove v. Cade,* 468 S.W.3d 32, 35 (Tex. 2015) (noting that a plaintiff's declaratory relief claim asking the court to recognize mineral rights mistakenly left out of a deed was "in effect a suit to reform the deed"). The substance of the Bank's action arises out of Washington Mutual's mistaken omission of Lot 9 from the 2003 DOT. As such, the declaratory relief theory is based on that mistaken omission, and reformation is not "merely

---

of the nature and basis of the claim and indicate generally the type of litigation involved.").

incidental to the ultimate relief sought."[4] *See Bradbury v. Higginson,* 140 P. 254, 256 (Cal. 1914). If the trial court were to grant the Bank's request for relief, "the legal effect would be identical to that involved in a successful reformation." *See N. Star Reinsurance Corp. v. Super. Ct.,* 13 Cal.Rptr.2d 775, 782 (App. 1992). Because the three-year statute of limitations bars the claim for reformation, *see Transam. Ins. Co. v. Trout,* 145 Ariz. 355, 358 (App. 1985), the declaratory relief claim is time-barred as well, *cf. Canyon del Rio,* 227 Ariz. at 341 ¶ 21 ("Declaratory judgment claims filed within the relevant analogous limitations period are treated as timely.").[5]

**¶18**      The Bank also argues that its declaratory judgment claim could have been premised on the doctrine of replacement of mortgages. The replacement doctrine "allows a senior lender that discharges its mortgage of record and records a replacement mortgage to keep its priority as against the holder of an *intervening interest* in the property." *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utilities, LLC,* 227 Ariz. 382, 387 ¶ 17 (App. 2011) (emphasis added). "Because an intervening lienholder maintains the same position it had before the replacement lender satisfied the pre-existing obligation, it suffers no prejudice." *Brimet II, LLC v. Destiny Homes Mktg., LLC,* 231 Ariz. 457, 459–60 ¶ 11 (App. 2013). The problem with the doctrine's application to this case, however, is that no "intervening interest" exists. Washington Mutual recorded a DOT in 2002 against Lots 8 and 9, and released that lien in 2003. Washington Mutual then recorded a DOT only against Lot 8, which the Bank acquired in 2003. FNB did not record its DOT against Lots 8 and 9 until 2006. Thus, FNB's DOT cannot be an "intervening interest" between the 2002 and 2003 DOTs, and the replacement doctrine is inapplicable as a matter of law.

---

[4]      The Bank explained during oral argument in the trial court that "[t]he problem is that if the mistake was not made, we would have an interest in both [Lots 8 and 9]."

[5]      Although not argued in its opening brief, the Bank claims in its reply brief that, in the alternative, the declaratory relief claim's limitations period was four years under A.R.S. § 12–550. We generally do not consider arguments raised for the first time in a reply brief. *Tucson Estates Prop. Owners Ass'n, Inc. v. McGovern,* 239 Ariz. 52, 55 n.4 ¶ 11 (App. 2016). Moreover, the four-year limitations period is to be used when "no limitation is otherwise prescribed[.]" A.R.S. § 12–550. Because we find that the three-year statute of limitations applies, this argument fails.

### 3. Motion to Amend

¶19      The Bank argues that the trial court erred by denying leave to amend the complaint to more specifically plead the declaratory relief claim. The denial of a motion to amend is reviewed for an abuse of discretion. *Alosi v. Hewitt*, 229 Ariz. 449, 452 ¶ 13 (App. 2012). Although leave to amend is liberally granted, *MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996), it may be denied if the amendment would be futile, *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 292 ¶ 26 (App. 2010). As discussed above, the court correctly ruled that the statute of limitations barred the declaratory relief claim. Accordingly, an amendment clarifying the declaratory relief sought would have been futile, and the court did not abuse its discretion by denying it. *See Tovrea v. Nolan,* 178 Ariz. 485, 490 (App. 1993).

## CONCLUSION

¶20      For the foregoing reasons, we affirm. We award costs to Pheasant Grove upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:   AA